1 | CAROLINE L. FOWLER, City Attorney (SBN 110313)
MATTHEW J. LeBLANC, Assistant City Attorney (SBN 118667)
2 | City of Santa Rosa
100 Santa Rosa Avenue, Room 8
3 | Santa Rosa, California 95404
Telephone: (707) 543-3040
4 | Facsimile: (707) 543-3055

5 | Attorney for Defendants Sergeant Richard Celli,
Sergeant Stephen Schwartz, Officer John Barr,
6 | and Officer Brian Boettger

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - San Francisco Division

ANDERSON PURNELL THURSTON,   Case No. C 08-1115 CRB (PR)

    Plaintiff,

    v.

SERGEANT RICHARD CELLI,
SERGEANT STEPHEN SCHWARTZ,
OFFICER JOHN BARR, and OFFICER
BRIAN BOETTGER,

    Defendants.

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; SUPPORTING DECLARATIONS**

Date: August 8, 2009
Time: 10:00 a.m.
Courtroom: 8

## TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF PLEADINGS | | 1 |
| III. | STATEMENT OF ISSUES TO BE DECIDED | | 1 |
| IV. | STATEMENT OF RELEVANT FACTS | | 2 |
| V. | LEGAL ANALYSIS | | 7 |
| | A. | Legal Standard for Summary Judgment | 7 |
| | B. | Under The Totality Of The Circumstances Apprehension Of Plaintiff's Decedent By Deadly Force Was Objectively Reasonable | 8 |
| | | 1. Use of Deadly Force | 9 |
| | | 2. Non-Deadly Alternatives | 12 |
| | | 3. No Duty To Retreat | 13 |
| | C. | The Officers Use Of Deadly Force Does Not Offend The Standard Applicable To Substantive Due Process Claims | 13 |
| VI. | CONCLUSION | | 14 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adickes v. S .H. Kress and Co.*,
398 U.S. 144, 157, 90 S.Ct. 5098, 26 L.Ed.2d 142 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Anderson v. Creighton*,
483 U.S. 635, 640, n.2, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Blue Ridge Insurance Co. v. Stanewich*,
142 F.3d 1145, 1149 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*British Airways Board v. Boeing Co.*,
585 F.2d 946, 952 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brosseau v. Haugen,*
543 U.S. 194, 200-01, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) . . . . . . . . . . . . . . . . . . . . . . . 12

*Celotex Corp. v. Catrett*,
477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) . . . . . . . . . . . . . . . . . . . . . . 7

*Chroma Lighting v. GTE Products Corporation*,
127 F.3d 1136 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*County of Sacramento v. Lewis,*
523 U.S. 833, 846 118 S.Ct. 1708, 140 L.Ed.2d 1043, (1998) . . . . . . . . . . . . . . . . . . . . . . . 13

*Curnow v. Ridgecrest Police*,
952 F.2d 321, 325 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Forrett v. Richardson*,
112 F.3d 416, 419 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Graham v. Connor,*
490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) . . . . . . . . . . . . . . . . . . . . 9, 11

*Harlow v. Fitzgerald*,
457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Jeffers v. Gomez*,
267 F.3d 895, 909 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*KRL vs. Estate of Moore*,
512 F.3d 1184, 1189 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Long v. City and County of Honolulu*,
511 F.3d 901, 906 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lynn v. Sheet Metal Workers Int'l Ass'n*,
804 F.2d 1472, 1483 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Manuel v. City of Atlanta*,
25 F.3d 990, 995 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Martinez v. City of Los Angeles*,
141 F.3d 1373, 1378 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mitchell v. Forsyth*,
472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) . . . . . . . . . . . . . . . . . . . . . 8

*Moreland v. Las Vegas Metro. Police Dep't*,
159 F.3d 365, 371 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Pearson v. Callahan*,
129 S.Ct. 808, 817, 172 L.Ed.2d 565, 575-576, 2009 U.S. Lexis 591 . . . . . . . . . . . . . . 9

*Plakas v. Drinski*
19 F.3d 743, 1148 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Porter v. Osborn*,
546 F.3d 1131, 1138 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*S.E.C. v. Seaboard Corp.*,
677 F.2d 1301, 1306 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Saucier v. Katz*,
533 U.S. 194, 121 S.Ct. 2151, 105 L.Ed.2d 272 (2001) . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Scott v. Henrich*,
39 F.3d 912, 914 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10, 12

*Smith v. Freland,*
954 F.2d 343, 347 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Taylor v. List*,
880 F.2d 1040, 1045 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tennessee v. Garner*,
471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wilson v. Layne*,
526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) . . . . . . . . . . . . . . . . . . . . 8

**Federal Statutes**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

**State Statues**

California Penal Code §187 ............................................... 3, 4

California Penal Code § 835a ............................................... 13

Defendants, Santa Rosa Police Sergeant Richard Celli, Sergeant Stephen Craig Schwartz, Officer John Barr, and Officer Brian Boettger, respectfully submit this Memorandum.

# I.

# INTRODUCTION

On 2/12/07, plaintiff's decedent (Haki Thurston), shot and killed his cousin. During the follow-up murder investigation, undercover police officers from the Oakland Police Department tracked plaintiff's decedent to a motel in Santa Rosa. The assistance of the Santa Rosa Police Department was requested by the Oakland Police Department. During the service of an arrest warrant plaintiff's decedent was shot and killed by the defendant officers after he was given lawful orders to stop, but instead immediately fled from the officers, reached towards his waistband, and began turning toward the officers.

# II.

# STATEMENT OF PLEADINGS

The central allegations of plaintiff's First Amended Complaint, set forth at p. 3, lines 12-24, are that the defendant officers unjustly and unnecessarily shot and killed plaintiff's unarmed son, thus, depriving plaintiff of his son's companionship and society.

The answer to the First Amended Complaint alleges, among other affirmative defenses, that the officers use of force was objectively reasonable under the circumstances and that the officers are entitled to the defense of qualified immunity.

# III.

# STATEMENT OF ISSUES TO BE DECIDED

Based on the facts set forth hereafter, defendants submit that the following issues should be decided:

- Did the defendant officers have probable cause to use deadly course;
- Are the defendant officers entitled to the application of qualified immunity and dismissal of the complaint;
- Did the defendant officers act with a purpose and with reasons unrelated to legitimate law enforcement objectives.

## IV.

## STATEMENT OF RELEVANT FACTS

For purposes of this motion only, the defendants hereby stipulate that plaintiff is a surviving family member of one, Haki Thurston, and has a right to assert a claim under 42 U.S.C. § 1983, as more specifically alleged in the First Amended Complaint.

In the early morning hours of 2/12/07, plaintiff's decedent (Haki Thurston) and Hodari Benson were playing a game of dice in an apartment complex laundry room on Bancroft Avenue in Oakland, California. Hodari Benson and plaintiff's decedent were cousins. During the dice game plaintiff's decedent and Benson got into a verbal argument. During the argument, plaintiff's decedent removed a 9 mm semi-automatic handgun from his right jacket pocket and shot and killed Benson. Benson sustained gunshot wounds to the head and upper torso. The murder weapon was never recovered by the Oakland Police Department. (See Declaration of Sergeant Randell Wingate, attached hereto and incorporated herein by reference).

During the ensuing murder investigation conducted by the Oakland Police Department, the following facts were uncovered and the following steps were taken:

- Within minutes of the murder, the victims body was carried out of the laundry room by plaintiff's decedent and one, Jatari Fisher. Jatari Fisher was the murder victim's younger brother and also the cousin of plaintiff's decedent. Plaintiff's decedent and Fisher placed the victim's body in the rear seat of Thurston's personal vehicle. Thurston's vehicle was being driven by his girlfriend, Cynthia Lanway. (See Declaration of Sergeant Randell Wingate, attached hereto and incorporated herein by reference);

- The three accomplices (Haki Thurston, Fisher, and Lanway) drove from the scene of the murder west on I-580, through the Caldicott Tunnel, and exited the freeway off of Fish Ranch Road, where Thurston and Fisher removed the victim's body from the car and dumped it down an embankment. (See Declaration of Sergeant Randell Wingate, attached hereto and incorporated herein by reference);

- While continuing to investigate the homicide, the Oakland Police Department

obtained information from the Vallejo Police Department that Haki Thurston had some connection to a residential burglary, committed in the City of Vallejo, during which several firearms were stolen, including long arms and handguns. (See Declaration of Sergeant Randell Wingate, attached hereto and incorporated herein by reference);

- On 2/20/07, eight days after the murder, personnel from the Oakland Police Department, Homicide Division, submitted a probable cause arrest warrant affidavit (RAMEY Warrant)[1] for the arrest of Haki Thurston in the Alameda County Superior Court. The Alameda County Superior Court reviewed the submitted papers and issued a § 187 Penal Code (RAMEY Warrant) for the arrest of plaintiff's decedent. (See Declaration of Randell Wingate, attached hereto and incorporated herein by reference);

- On 2/23/07, the Oakland Police Department received information that plaintiff's decedent and his girlfriend, accomplice Cynthia Lanway, were staying in a motel in Santa Rosa. Personnel from the Oakland Police Department began conducting surveillance of the motel in an attempt to locate and arrest plaintiff's decedent. During the surveillance, undercover personnel from the Oakland Police Department made a visual sighting of plaintiff's decedent at the subject motel. (See Declaration of Sergeant Randell Wingate, attached hereto and incorporated herein by reference);

- On 2/23/07, at approximately 9 p.m., the Santa Rosa Police Department was contacted by personnel from the Oakland Police Department and informed that undercover officers from the Oakland Police Department had tracked plaintiff's decedent and an accomplice (Lanway) to a motel in Santa Rosa and, at that time, had them under surveillance. The Santa Rosa Police Department was contacted, primarily, because the arrest, if made, would occur within the jurisdiction of Santa Rosa and the murder suspect was considered to be armed and dangerous. (See Declarations of Sergeant Randell Wingate and Sergeant Michael Clark, attached

---

[1] ***People v. Ramey*** (1976) 16 Cal.3d 263

Defendants' Memorandum of Points & Authorities     3     Case No. CV 08-1115 CRB (PR)

hereto and incorporated herein by reference);

- During the aforementioned contact, the Santa Rosa Police Department was further informed by personnel from the Oakland Police Department, that they had, in their possession, a Penal Code § 187 RAMEY Warrant for Haki Thurston's arrest, that the 9 mm handgun he used during the homicide had not been recovered, and that he was a suspect in, or was believed to be connected with individuals who committed a residential burglary in the City of Vallejo, in which numerous firearms and assault weapons were stolen. (See Declarations of Sergeant Randell Wingate and Sergeant Michael Clark, attached hereto and incorporated herein by reference);

- Over the next hour, approximately 9 p.m. to 10:00 p.m. on 2/23/07, personnel from the two police agencies assembled at a command post located near the subject motel, making direct contact with each other, and further exchanging additional information regarding the murder suspect and discussing heightened concern for officer safety, as well as the safety of uninvolved motel patrons, including a three-year-old child of Lanway believed to be in the suspects motel room. During this briefing, members from the Santa Rosa Police Department Special Weapons and Tactical Team (SWAT), including Sergeant Richard Celli, Sergeant Craig Schwartz, and Officers John Barr and Brian Boettger, were also assembled in the field and present. (See Declarations of Sergeant Randell Wingate, Sergeant Michael Clark, Sergeant Richard Celli, Sergeant Craig Schwartz, Officer John Barr, and Officer Brian Boettger, attached hereto and incorporated herein by reference);

- During the joint field briefing, a radio communication was received from the undercover Oakland Police Department officers who were located in the motel parking lot. They reported that Thurston had exited his motel room and was walking back and forth in the first floor corridor of the motel. The Santa Rosa Police Department SWAT team was directed to immediately respond to the motel. (See Declarations of Sergeant Randell Wingate, Sergeant Michael Clark, Sergeant Craig Schwartz, Officers John Barr and Brian Boettger, attached hereto and incorporated

herein by reference);

- The SWAT team, containing the defendant officers, arrived at the motel and parked their unmarked vehicles on the northeast side of the motel. After getting out of their vehicles, they monitored radio communication being broadcast by the undercover officers who were continuing to watch the movement of Thurston. Thurston had now exited the motel and was walking in the south parking lot of the motel complex, opposite from where the SWAT team parked and exited their vehicles. (See Declarations of Sergeant Richard Celli, Sergeant Craig Schwartz, and Officers John Barr and Brian Boettger, attached hereto and incorporated herein by reference; see also, true and correct copies of aerial photographs of the motel complex, attached hereto as defendants' Exhibits 1, 2, and 3, and Declarations of Sergeant Richard Celli, Sergeant Craig Schwartz, Officer John Barr, and Officer Brian Boettger re: photos).

- As a group, the defendant officers began to move along the east side of the multi-storied motel building, from north to south. (See Declarations of Sergeant Richard Celli, Sergeant Craig Schwartz, Officer John Barr, and Officer Brian Boettger, attached hereto and incorporated herein by reference);

- As the defendant officers approached the southeast corner of the motel building, they saw the murder suspect running in an easterly direction. The officers immediately gave commands, first identifying themselves as police officers, "Police, Police!", and ordering the suspect to "Get on the ground, Get on the ground!" The suspect was also commanded, numerous times, to "Put your hands out where we can see them", "Get on the ground. . . Police, Stop!" (See Declarations of Sergeant Richard Celli, Sergeant Craig Schwartz, Officer John Barr, and Officer Brian Boettger, attached hereto and incorporated herein by reference);

- Plaintiff's decedent ignored all of the orders and instead continued running east through the parking lot, away from the defendant officers and toward a wooded area located on the east perimeter of the motel property, separating the motel property

1  from southbound U.S. 101. The officers pursued the suspect. (See Declarations of Sergeant Richard Celli, Sergeant Craig Schwartz, Officer John Barr and Officer Brian Boettger, attached hereto and incorporated herein by reference); see also, true and correct copies of photographs of wooded area, attached hereto as Exhibits 4, 5, and 6; See also, Declarations of Celli, Schwartz, Barr and Boettger re: photos);

- Within seconds of the officers pursuing plaintiff's decedent, while continuing to shout out orders for him to stop, to show his hands, and to get on the ground, the defendant officers saw plaintiff's decedent reach toward his waistband and begin to turn toward the officers. At that moment, each of the defendant officers believed plaintiff's decedent was reaching for a weapon, that he was attempting to position himself behind large trees to gain cover and intending to shoot it out with the officers. At that very moment, each of the defendant officers was exposed to any gun fire that might come from plaintiff's decedent. Each of them, nearly simultaneously, fired their weapons at plaintiff's decedent. (See Declarations of Celli, Schwarz, Barr and Boettger, attached hereto and incorporated herein by reference).

- A total of eight bullets entered plaintiff's decedent; namely, three entered the right upper torso; one grazed the right side upper torso; three entered the back; one entered the left distal thigh. No weapon was found on plaintiff's decedent.(Attached hereto as Exhibit 7, is a true and correct copy of the 8 page autopsy report prepared by Dr. Kelly A. Arthur, M.D., Forensic Pathologist. Said report is also made a part of the investigative report prepared by the Sonoma County Sheriff's Department, as well as the separate investigative report prepared by the District Attorney of Sonoma County, complete copies of which are filed with this motion. (See Declaration of Matthew J. LeBlanc, Assistant City Attorney, attached hereto and incorporated herein by reference. See also, Declarations of Celli, Schwartz, Barr and Boettger, attached hereto and incorporated herein by reference).

//
//

# V.

# LEGAL ANALYSIS

## A. Legal Standard for Summary Judgment

Summary judgment ". . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law". **Fed.R.Civ.P. 56(c)**. One of the principal purposes of **Rule 56** is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 5098, 26 L.Ed.2d 142 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve different versions of the truth. *Lynn v. Sheet Metal Workers Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

If the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, then the respondent must show by specific facts, the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id., at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978); see also, *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Moreover, if the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for

trial. ***Blue Ridge Insurance Co. v. Stanewich***, 142 F.3d 1145, 1149 (9th Cir. 1998). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. ***Taylor v. List***, 880 F.2d 1040, 1045 (9th Cir. 1989).

Once the moving party meets the requirement of **Rule 56** by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden then shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Id., 91 L.Ed.2d, at 217.

**B.  Under The Totality Of The Circumstances Apprehension Of Plaintiff's Decedent By Deadly Force Was Objectively Reasonable**

When a constitutional violation occurs, as alleged in plaintiff's complaint, "law enforcement officers nonetheless are entitled to qualified immunity if they acted reasonably under the circumstances." ***KRL vs. Estate of Moore***, 512 F.3d 1184, 1189 (9th Cir. 2008) (citing ***Wilson v. Layne***, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

The defense of qualified immunity "shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'". ***Scott v. Henrich***, 39 F.3d 912, 914 (9th Cir. 1994) citing ***Harlow v. Fitzgerald***, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . , it is effectively lost if a case is erroneously permitted to go to trial." ***Mitchell v. Forsyth***, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The "driving force" behind creation of the qualified immunity doctrine, was a desire to insure that "'insubstantial claims' against government officials will be resolved prior to discovery." ***Anderson v. Creighton***, 483 U.S. 635, 640, n.2, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The moving defendants are mindful that in cases such as this (where deadly force was used), the court must insure that the defendant officers are not taking advantage of the fact that the witness

most likely to contradict their statements - the person shot dead - is unable to testify. ***Scott v. Henrich***, supra, 39 F.3d at 915. With this principle in mind and with this court's **Order Of Service**, the moving defendants have filed with this motion, a complete copy of the investigation pertaining to the incident. The filing contains the investigative report prepared by the Sonoma County Sheriff's Department and a separate investigative report prepared by the District Attorney of Sonoma County. (See Supporting Declaration of Matthew J. LeBlanc, Assistant City Attorney, attached hereto and incorporated herein by reference). The moving parties invite the court's review of the officer's post-incident interview transcripts, including the transcripts of the Oakland Police Department undercover officers, Valle and Shavies, who were in their vehicles when shots were fired.

In ***Saucier v. Katz***, 533 U.S. 194, 121 S.Ct. 2151, 105 L.Ed.2d 272 (2001) the United States Supreme Court mandated a two-step qualified immunity analysis which required district courts to first determine whether the facts that a plaintiff has alleged or shown, make out a violation of a constitutional right and then next, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendants alleged misconduct. ***Saucier***, 533 U.S., at 201, 121 S.Ct. 2151, 150 L.Ed.2d 272. Qualified immunity is applicable unless the officials conduct violated a clearly established constitutional right. ***Anderson v. Creighton***, supra, at 640, 107 S.Ct. 3034, 97 L.Ed.2d 523.

The Supreme Court recently modified the analysis outlined in ***Saucier*** and concluded that the two-step ***Saucier*** analysis should no longer be mandated in all cases. ***Pearson v. Callahan***, 129 S.Ct. 808, 817, 172 L.Ed.2d 565, 575-576, 2009 U.S. Lexis 591. Following ***Pearson***, supra, courts are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. In this case, the moving defendant officers respectfully submit that the two-step analysis of ***Saucier***, although no longer required, is appropriate.

**1. Use of Deadly Force**

Under ***Saucier*** the court first analyzes whether plaintiff has shown a constitutional violation. Claims of excessive and deadly force are analyzed under the Fourth Amendments reasonableness standard. ***Long v. City and County of Honolulu***, 511 F.3d 901, 906 (9th Cir. 2007) (citing ***Graham***

*v. Connor*, 1; ***Tennessee v. Garner***, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

The use of deadly force to prevent the escape of a felony suspect is constitutionally reasonable if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. ***Tennessee v. Garner***, 471 U.S. 1, 3, 105 S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1985); see also, ***Scott v. Henrich***, 39 F.3d 912, 914 (9th Cir. 1994).

The moving defendants anticipate that plaintiff, consistent with his allegations, will argue that decedent was not armed nor posed an immediate threat to the defendant officers, or others, at the time of the shooting. To the extent that plaintiff makes this argument, decedent did not have to be actually armed or, for that matter, pose an immediate threat to the officers or others at the time of the shooting. In ***Tennessee v. Garner***, supra, the Supreme Court identified specific situations in which a fleeing felony suspect may be deemed to pose a threat of serious harm to an officer or others:

> **"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape using deadly force. Thus, if the suspect threatens the officer with a weapon** *or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given*." ***Tennessee v. Garner,*** **supra, U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1, 11, 12 (*emphasis* added)**.

Under the ***Tennessee v. Garner*** test, it is unnecessary that the suspect turns out to be actually armed or threatened the officers with a weapon. <u>Whenever there is probable cause to believe that the suspect has committed a crime involving the infliction, or threatened infliction, of serious physical harm, deadly force may be used if necessary, to prevent escape, if some warning has been given, where feasible</u>. ***Forrett v. Richardson***, 112 F.3d 416, 419 (9th Cir. 1997), overruled on other grounds by ***Chroma Lighting v. GTE Products Corporation***, 127 F.3d 1136 (9th Cir. 1997).

The circumstances of this case are similar to the facts present in ***Forrett v. Richardson***, supra. ***Forrett*** involved a suspect who shot his victim at point-blank range, stole a number of guns, eluded the police in a residential area, and was in the process of scaling a backyard fence in order to escape when he was shot. The suspect had been told to stop and surrender, but refused. Id. at

418. No gun was found on the suspect or in the vicinity of where he was captured. The court reasoned that using deadly force was justified because the police reasonably feared the suspect "would seize an opportunity to take an innocent bystander hostage." Id. at 421. As the Ninth Circuit Court has emphasized, "broad discretion . . . must be afforded to police officers who face tense situations" and the court should defer "to the judgment of reasonable officers on the scene." **Jeffers v. Gomez**, 267 F.3d 895, 909 (9th Cir. 2001), (Referencing **Saucier** and **Graham**, supra). Indeed, all determinations of the reasonableness of force ". . . must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." **Graham v. Connor**, supra, 490 U.S. at 396-97, 109 S.Ct. 1872, 104 L.Ed.2d at 456. Moreover, all determinations of reasonableness are made from the perspective of a reasonable officer on the scene confronting the same facts, information, and circumstances. **Graham v. Conner,** supra, 490 U.S. at 396-397. Thus, under **Graham**:

> **"We must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action, may seen quite different to someone facing a possible assailant than to someone analyzing the question at leisure." Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992)**.

From the vantage of an officer confronting a dangerous suspect, "a potential arrestee who is neither physically subdued nor compliantly yielding remains capable of generating surprise, aggression, and death." **Manuel v. City of Atlanta**, 25 F.3d 990, 995 (11th Cir. 1994).

On the facts now before the court, the moving defendants submit that the use of deadly force by the defendant officers, nearly simultaneously, was objectively reasonable. Each of them had probable cause to believe that plaintiff's decedent had, in fact, committed a vicious murder, that the murder weapon had not been recovered, and that the suspect was considered to be armed and dangerous. The officers identified themselves and gave lawful commands to plaintiff's decedent. In response, plaintiff's decedent fled and as he did so, was seen reaching into his waistband. The defendant officers should be entitled to qualified immunity because the law, at the time of this

incident, was not sufficiently settled, that a police officer, under the circumstances confronting these officers, could not use deadly force or, alternatively, that plaintiff's decedent had a constitutional right to be free from deadly force as he reached toward his waistband. See ***Brosseau v. Haugen*** 543 U.S. 194, 200-01, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (finding where officer shot fleeing suspect who presented risk to others, Fourth Amendment law not "clearly established"; noting "this area is one in which the result depends very much on the facts of each case").

### 2. Non-Deadly Alternatives

The moving party's anticipate that plaintiff may argue that the defendant officers should have used non-deadly alternatives in seizing his son, whatever those might be. There is no precedent in any federal circuit court which says that the Constitution requires law enforcement officers to use all feasible alternatives to avoid a situation where deadly force can justifiably be used. There are, however, cases which support the assertion that, where deadly force is otherwise justified under the Constitution, there is no constitutional duty to first use non-deadly alternatives. ***Plakas v. Drinski*** 19 F.3d 743, 1148 (7th Cir. 1994). This holds true in the Ninth Circuit as well. (***Scott v. Henrich***, 39 F.3d 912, 915 (9th Cir. 1994) [The appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available]. The rationale that supports this rule is practical and understandable:

> **"Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. In the heat of the battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the *least* intrusive alternative (*an inherently subjective determination*) and choose that option, and that option only. Imposing such a requirement would inevitably induce tentativeness by officers and thus deter police from protecting the public and themselves. It would also entangle the courts in endless second guessing of police decisions made under stress and subject to the exigencies of the moment."**
> (***Scott v. Henrich***, supra, 39 F.3d at 915).

The defendant officers were not required to use non-deadly alternatives when they saw plaintiff's decedent reach toward his waistband. They had every reason to believe that decedent was attempting to arm himself, especially when they knew that the murder weapon had not been recovered.

### 3. No Duty To Retreat

The defendant officers had no legal duty to retreat from plaintiffs' decedent. California Penal Code § 835a provides, in pertinent part, as follows:

> **"Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense, may use reasonable force to effect the arrest, to prevent escape or overcome resistance. A peace officer who makes, or attempts to make an arrest, need not retreat or desist from his efforts by reason of the resistence or threatened resistence of the person being arrested . . ."**

## C. The Officers Use Of Deadly Force Does Not Offend The Standard Applicable To Substantive Due Process Claims

In the First Amended Complaint, plaintiff alleges, in short, that defendants deprived him of due process in the companionship and society of his son. The moving defendants recognize that under the Fourteenth Amendment a parent has a constitutionally protected liberty interest in the companionship and society of his or her child. ***Curnow v. Ridgecrest Police***, 952 F.2d 321, 325 (9th Cir. 1991); see also, ***Moreland v. Las Vegas Metro. Police Dep't***, 159 F.3d 365, 371 (9th Cir. 1998).

In ***County of Sacramento v. Lewis,*** 523 U.S. 833, 846 118 S.Ct. 1708, 140 L.Ed.2d 1043, (1998), the Supreme Court noted that law enforcement officers confront a variety of circumstances that may lead to the use of force, and drew a distinction between situations that evolve in a time frame that permits the officer to deliberate before acting and those that escalate so quickly that the officer must make a snap judgment. Thus, "as the very term 'deliberate indifference' implies, the standard is sensibly employed only when an actual deliberation is practical." ***County of Sacramento v. Lewis,*** 523 U.S. at 851; see also, ***Porter v. Osborn***, 546 F.3d 1131, 1138 (9th Cir. 2008). When, because of the circumstances or rapidly escalating nature of the confrontation, officers do not have time to deliberate, the relevant question on the facts is whether the "***shocks the conscience***" standard is met by showing that the defendant officers acted with deliberate indifference or a more demanding showing that they acted with a purpose to harm for reasons unrelated to legitimate law enforcement objectives. ***County of Sacramento v. Lewis***, supra, 523 U.S. at 836; see also, ***Porter v. Osborn***, supra, 546 F.3d at 1137. The court in ***Porter*** concluded, in short, that in an urgent situation, one that is rapidly escalating, the question is whether or not a public safety officer acted

with a purpose to harm, without regard to legitimate law enforcement objectives. ***Porter***, supra, 546 F.3d at 1138, 1139.

If the action of the defendant officers is deemed to be objectively reasonable, "it follows that their conduct does not offend the more stringent standard applicable to substantive due process claims." ***Moreland***, supra, 159 F.3d at 371, n. 4.

## VI.

## CONCLUSION

The defendant officers respectfully submit that the force they used, under the circumstances, was objectively reasonable under the Fourth Amendment, entitling them to the application of qualified immunity. Lastly, the moving parties submit that they did not violate plaintiff's Fourteenth Amendment liberty interest arising out of his relationship with the decedent.

DATED: June 29, 2009          Respectfully Submitted,


_____s/s_____
MATTHEW J. LeBLANC
Assistant City Attorney
Attorney for Defendants Sergeant Richard Celli,
Sergeant Stephen Schwartz, Officer John Barr
and Officer Brian Boettger