CAROLINE L. FOWLER, City Attorney (SBN 110313)
MATTHEW J. LeBLANC, Assistant City Attorney (SBN 118667)
City of Santa Rosa
100 Santa Rosa Avenue, Room 8
Santa Rosa, California 95404
Telephone: (707) 543-3040
Facsimile: (707) 543-3055

Attorney for Defendants Sergeant Richard Celli,
Sergeant Stephen Schwartz, Officer John Barr,
and Officer Brian Boettger

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - San Francisco Division

| | |
|---|---|
| ANDERSON PURNELL THURSTON, | Case No. C 08-1115 CRB (PR) |
| Plaintiff, | **DECLARATION OF SERGEANT RICHARD T. CELLI** |
| v. | |
| SERGEANT RICHARD CELLI, SERGEANT STEPHEN SCHWARTZ, OFFICER JOHN BARR, and OFFICER BRIAN BOETTGER, | |
| Defendants. | |

I, Richard T. Celli, declare as follows:

1. I have personal knowledge of the facts set forth in this declaration and if called as a witness could and would competently testify thereto.

2. I have been employed by the Santa Rosa Police Department since November 5, 1990. During this time I have served in the capacity of a Patrol Officer in the Field Services Division, an officer assigned to the Neighborhood Enforcement Team (NET), an officer assigned to the Narcotics/Vice Unit, Sonoma County Narcotics Task Force , and as a Task Force Member at DEA Group One, out of San Francisco, Field Training Officer (FTO), Patrol Sergeant, and SWAT Team Member and SWAT Team Sergeant.

3. On 2/23/07, between the hours of approximately 11:00 a.m. and 9:00 p.m., I was

involved in SWAT training, intending to work a partial patrol shift after the completion of the SWAT training. At approximately 9:00 p.m., after showering in the department locker room and preparing for the partial patrol shift, I was contacted by Lt. Briggs of the Santa Rosa Police Department who advised me that there was an incident developing at the Comfort Inn Motel in Santa Rosa, in which the Oakland Police Department had located a Penal Code § 187 murder suspect for which they had a RAMEY Warrant for the suspect, and a Penal Code § 836 Warrant for a female companion. Lt. Briggs further informed me that the murder suspect was considered armed. I understood that Sergeant Mike Clark was out on the scene and I contacted him immediately.

4. In my initial contact with Sergeant Clark, I was provided the name and physical description of the two suspects.

5. Then, on 2/23/07, some time between 9:00 p.m. and 10:00 p.m., personnel from the Oakland Police Department and the Santa Rosa Police Department, including myself, Sergeant Randell Wingate from the Oakland Police Department, Sergeant Michael Clark, Sergeant Craig Schwartz, and Santa Rosa Police Officers John Barr and Brian Boettger, assembled at a command post located near the subject motel. During this joint field briefing, I reviewed the RAMEY Warrant for the murder suspect's arrest, reviewed photographs of the suspect, and discussed with all present, heightened concern for officer safety, the safety of uninvolved motel patrons, including a young child of the other suspect, who was believed to be in the suspects motel room. During this briefing, we also learned that the murder weapon had not been recovered, that the murder suspect was also a suspect in, or was believed to be connected with individuals who committed a residential burglary in the City of Vallejo, in which numerous firearms and assault weapons were stolen. The murder suspect was considered to be armed and dangerous.

6. During the joint field briefing mentioned above, a radio broadcast was received from the undercover Oakland Police Department officers who were located in the motel parking lot. They reported, in short, that the murder suspect had exited his motel room and was walking back and forth in the first-floor corridor of the motel. The Santa Rosa Police Department SWAT Team, including myself, was directed to immediately respond to the motel.

7. Our SWAT team immediately responded to the subject motel and parked our

1  unmarked vehicles on the northeast side of the motel. After getting out of our vehicles, we
2  monitored communication being sent by the undercover Oakland Police Department officers who
3  were continuing to watch the movement of the murder suspect. From that communication, I
4  understood that the murder suspect had now exited the motel and was walking in the south parking
5  lot of the motel complex, opposite from where our SWAT team parked and exited our vehicles.
6  Attached to Defendants' Motion for Summary Judgment as Exhibits 1 , 2 , and 3, are true and correct
7  copies of aerial photographs showing the motel complex, portions of U.S. 101, and surrounding area.

8.  As a group, our SWAT team, including myself, began to move along the east side of the multi-storied motel building, from north to south. As we approached the southeast corner of the motel building, we saw an adult male, fitting the physical description of the murder suspect, running in an easterly direction. Immediately, loud, distinct, verbal commands, were given to the individual, first identifying ourselves as police officers, "Police, Police", and ordering the suspect to "Get on the ground, Get on the ground!" The suspect was also commanded, numerous times, to "Put your hands out where we can see them", "Get on the ground . . . Police, Stop!"

9.  The suspect did not follow any of the verbal orders but instead continued running east through the parking lot, away from the SWAT team members and toward a wooded area located on the east perimeter of the motel property, separating the motel property from southbound U.S. 101. We pursued the suspect. Attached to defendants Motion for Summary Judgment as Exhibits 4, 5, and 6, are true and correct copies of photographs showing the wooded area.

10.  Within seconds of our pursuit of the suspect and while continuing to shout out orders for him to stop, to show his hands, and to get on the ground, I saw the suspect reach toward his waistband. I immediately shouted words to the effect, "He's reaching, He's reaching!!" At that moment, the suspect began to turn toward us. Also at that moment, I believed that the suspect was reaching for a weapon, that he was attempting to position himself behind large trees to gain cover, and intending to shoot it out with us. Also at that very moment, I, along with the other SWAT team members, was exposed to any gun fire that might come from the suspect. At that very moment, nearly simultaneous with the other SWAT team members, I fired my weapon at the suspect and he fell to the ground. No weapon was found on the suspect.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____, 2009, Santa Rosa, California.

                                                        _____s/s_____
                                                        Richard T. Celli, Sergeant
                                                        Santa Rosa Police Department