IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anderson P. Thurston, ) | |
| ) | |
| Plaintiff, ) | No. C 08-1115 CRB |
| ) | |
| v. ) | <u>ORDER GRANTING</u> |
| ) | <u>DEFENDANTS' MOTION FOR</u> |
| Santa Rosa Police Dep't, et al., ) | <u>SUMMARY JUDGMENT</u> |
| ) | |
| Defendant. ) | (Docket # 28) |
| ) | |

Plaintiff, an inmate at Mule Creek State Prison, seeks damages under 42 U.S.C. § 1983 for the allegedly unlawful killing of his son by four City of Santa Rosa police officers.

Per order filed on April 10, 2009, the Court found that plaintiff's allegations in his First Amended Complaint ("FAC") appeared to state a cognizable claim for damages under § 1983, when liberally construed, and ordered the United States Marshal to serve the four named officers -- Sergeant Richard Celli, Sergeant Stephen Schwartz, Officer John Barr and Officer Brian Boettger ("Defendants").

Defendants now move for summary judgment on the ground that no triable issue exists as to any material fact and that they are entitled to judgment as a matter of law. Defendants also claim they are entitled to qualified immunity. Plaintiff has filed an opposition and Defendants have filed a reply.

**BACKGROUND**

Defendants are all officers of the Santa Rosa Police Department's Special Weapons and Tactics ("SWAT") team. On February 23, 2007, they were called out to assist in executing an arrest warrant on Plaintiff's son, Haki Thurston. The Oakland Police Department informed the Santa Rosa Police Department that the warrant was for Thurston's suspected murder of his cousin in the laundromat of an apartment complex in Oakland. Wingate Decl. ¶ 3. According to the Oakland Police Department, Thurston, Hodari Benson and a few other people were playing a dice game when Thurston and Benson got into an argument. Id. At one point, Thurston pulled out a 9 mm semi-automatic handgun from his right pocket and killed Benson. Id. The Oakland Police Department never recovered the weapon. Id. Thurston, Hodari Benson's brother, Jatari Fisher, and Thurston's girlfriend, Cynthia Lanway, drove the body to the hills and dumped it down an embankment. Id.

The Oakland Police Department further informed the Santa Rosa Police Department that the Vallejo Police Department suspected Haki Thurston of involvement in a residential burglary, during which several firearms were stolen. Id. The Oakland Police Department learned that Haki Thurston and Cynthia Lanway

2

were staying in a motel in Santa Rosa and contacted the Santa Rosa Police Department for assistance in executing the arrest warrant. Id. Because they believed Thurston to be armed and dangerous, they called out the SWAT team. Id. The two departments met in the field, were briefed by officers of the Oakland Police Department on the situation, contacted undercover agents watching the motel and then moved into position at the motel. Id.

Haki Thurston exited the motel and was walking through the parking lot when SWAT officers first engaged him. Celli Decl. ¶ 8. Not responding to their identification as police and their commands to get on the ground, Thurston ran towards a wooded area and fence between the motel and the highway. Id. ¶ 9. According to Defendants, he reached into his waistband as he neared the wooded area and fence. Id. ¶ 10. Fearing that he was reaching for a weapon, the SWAT officers opened fire and Thurston fell to the ground. Id. No weapon was found on him. Id. Thurston suffered 11 gunshot wounds and was pronounced dead on arrival at the hospital. Mot. for Summ. J. Ex. 7

The shooting triggered Santa Rosa Police Department protocols for Officer Involved Shootings ("OIS"). The Santa Rosa Sheriff's Department and the Sonoma County District Attorney conducted an investigation of the incident, reaching the conclusion that the death of Haki Thurston was not by criminal act, unlawful act or an omission to act. Critical Incident Report, Santa Rosa Police Department Employee-Involved Fatal Incident.

/

**DISCUSSION**

**A.     Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  Celotex Corp., 477 U.S. at 323.

4

**B.   Claims & Analysis**

Plaintiff claims that Defendants used unlawful deadly force in apprehending his son, Haki Thurston, in violation of his Fourth Amendment rights. He further claims that due to Defendants' actions, he and his granddaughter have lost the consortium of Thurston in violation of the Due Process Clause of the Fourteenth Amendment.

**1.   Deadly Force**

While the use of "force" is reasonable under the Fourth Amendment where it would seem justified to a reasonable officer in light of the surrounding circumstances, the use of "deadly force" is only justified where the officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Tennessee v. Garner, 471 U.S. 1, 3 (1985).

Under Garner, an officer may be justified in using deadly force if a suspect threatens him with a weapon such as a gun or a knife. Haugen v. Brosseau, 351 F.3d 372, 381 (9th Cir. 2003) (citing cases), judgment rev'd on other grounds, 543 U.S. 194 (2004). And he may be justified in using deadly force based on the nature of the crime committed by the fleeing suspect. Id. at 382 (citing cases). As Garner put it, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." Garner, 471 U.S. at 11-12.

5

Defendants claim they are entitled to summary judgment because they had probable cause to believe that the use of deadly force was necessary under the circumstances. In support, they submit declarations and documentary evidence showing the following:

On February 23, 2007, some time between 9:00 p.m. and 10:00 p.m., personnel from the Oakland and Santa Rosa police departments (including Defendants) assembled at a command post near the Comfort Inn Motel in Santa Rosa. During a joint briefing, Defendants were informed that they were preparing to execute an arrest warrant for Thurston's alleged murder of his cousin. Defendants reviewed the warrant, pictures of the suspect and discussed with all present the heightened concern for the safety of the officers and motel patrons. During the briefing, Defendants also learned that the murder weapon had not been recovered, that the suspect was also a suspect in a residential burglary in the City of Vallejo in which several firearms and assault weapons were stolen. The suspect was considered to be armed and dangerous. Celli Decl. ¶ 5.

During the field briefing, a radio transmission was received from the undercover Oakland Police Department officers who were located in the motel parking lot. They reported that Thurston had exited his motel room and was walking around outside. Defendants (all members of the Santa Rosa SWAT team) then moved to the motel. Id. ¶ 6.

Upon arriving at the motel, Defendants monitored radio traffic from the undercover Oakland Police Department officers who were watching Thurston's movements. Id. ¶ 7. Defendants

learned that Thurston was walking in the south parking lot of the motel complex. Id. Defendants exited their vehicles and moved along the east side of the building, from north to south. As they approached the southeast corner, they saw an individual matching the description of Haki Thurston running east. Defendants then identified themselves as police officers, shouting "Police, Police," and ordering the suspect to "Get on the ground, Get on the ground!" Defendants also commanded Thurston to "Put your hands out where we can see them." Celli Decl. ¶ 8.

Thurston ignored police commands to stop and instead ran east, away from Defendants and toward a wooded area that separated the motel from southbound U.S. 101. Id. ¶ 9. Each SWAT team member defendant declares under penalty of perjury that, as Thurston reached the wooded area and fence line, and as Defendants continued to shout out orders for him to stop, show his hands and get on the ground, Thurston reached towards his waistband. As they observed this, Sergeant Celli shouted "He's reaching, He's reaching!!" Thurston then began to turn towards them. At that moment, Defendants feared that Thurston was trying to pull out his weapon and shoot them from behind the trees he had reached as they were out in the open. Defendants, nearly simultaneously, fired their weapons at Thurston and he fell to the ground. Barr Decl. ¶ 10; Boettger Decl. ¶ 8; Celli Decl. ¶ 10; Schwartz Decl. ¶ 10. No weapon was found on Thurston. Celli Decl. ¶ 10. Thurston suffered 11 gunshot wounds and was pronounced dead on arrival at Santa Rosa Memorial Hospital. Mot. for Summ. J. Ex. 7.

Under these facts, Defendants had probable cause to believe that Thurston posed "a significant threat of death or serious physical injury to the officer[s] or others." Garner, 471 U.S. at 3. Defendants were executing an arrest warrant for murder on a suspect who was considered armed and dangerous -- Thurston had shot and killed his cousin after an argument, and was a suspect in the recent theft of several firearms and assault weapons. When Defendants commanded him to stop, get on the ground and show his hands, Thurston turned and ran. He continued to ignore their commands as he ran. When Thurston reached the cover of large trees, behind which he could protect himself, he reached into his waistband, a common area for an individual to hide a gun. He then began to turn, while still reaching into his waistband. Defendants were out in the open, with no coverage, giving rise to the reasonable belief that they would be entirely exposed to gunfire. Under these circumstances, it cannot be said that Defendants' use of deadly force violated Thurston's Fourth Amendment rights. Cf. Forrett v. Richardson, 112 F.3d 416, 419-21 (9th Cir. 1997) (finding deadly force was reasonable under 4th Amendment where fleeing suspect had shot a victim in the course of a burglary and had disregarded warnings).

Plaintiff does not offer a different eyewitness version of the facts. Nor does he submit any other evidence to controvert the facts Defendants have set forth. Rather, he argues that there were non-deadly alternatives (namely pepper spray) Defendants failed to employ before using deadly force on his son. Pl.'s Opp. at 3, 7. But the Fourth Amendment does not require police to exhaust every possible alternative before using

8

justifiable deadly force. Forrett, 112 F.3d at 420. The alternative must be reasonably likely to lead to apprehension before the suspect can cause further harm and must be apparent to a reasonable officer on the scene. Id. Here, it simply cannot be said that a reasonable officer on the scene would have thought to counter an imminent threat of gunfire with pepper spray. See id. (determination of whether a reasonable non-deadly alternative existed is made from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight).

Plaintiff has not "set forth specific facts showing that there is a genuine issue for trial" on a Fourth Amendment claim. Fed. R. Civ. P. 56(e). His unsupported claim that the declarations and other evidence submitted by Defendants is false and misleading is not enough to defeat summary judgment. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (conclusory allegations insufficient to defeat summary judgment). Defendants are entitled to summary judgment as a matter of law. Celotex Corp., 477 U.S. at 323.

At minimum, Defendants are entitled to qualified immunity from damages because reasonable officers could have believed that their conduct was lawful under the circumstances. See Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier v. Katz, 533 U.S. 194, 205-06 (2001). Or, put differently, reasonable officers could have believed that Thurston posed a significant threat of death or serious bodily harm to the officers or others, even if it now turns out that Thurston did not have a gun. See id.
/
/

## 2. **Substantive Due Process**

Surviving family members of a person killed by law enforcement officers may bring a claim under § 1983 for violation of their substantive due process rights in the companionship and society of the decedent. Moreland v. Las Vegas Metro. Police, 159 F.3d 365, 371 (9th Cir. 1998). The standard of culpability applicable to such a claim is arbitrary conduct which shocks the conscience. See County of Sacramento v. Lewis, 523 U.S. 833, 845-47 (1998). The shock the conscience test may be met by showing that a defendant acted with deliberate indifference or by showing that he acted with a purpose to harm the decedent for reasons unrelated to legitimate law enforcement objectives. Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008). If the officers had the opportunity for actual deliberation, the deliberate indifference standard applies, but if there was not sufficient time for such deliberation, then the plaintiff must satisfy the more stringent purpose to harm standard. Id. at 1137-40 (discussing Lewis and progeny). To satisfy the purpose to harm standard, a plaintiff must show "the intent to inflict force beyond that which is required by a legitimate law enforcement objective." Id. at 1140 (citations and internal quotations omitted).

Here, the undisputed facts show that Defendants did not violate the Fourth Amendment because their use of deadly force was reasonable under the circumstances. The undisputed facts also show that Defendants did not violate Plaintiff's substantive due process rights in the companionship and society of his son. Defendants' reasonable use of deadly force does not satisfy the

shock the conscience standard applicable to Plaintiff's substantive due process claim; such justifiable force was inextricably and necessarily related to legitimate law enforcement objectives. See id.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (docket # 28) is GRANTED.

The Clerk shall enter judgment in favor of Defendants, terminate all pending motions as moot/lacking merit, and close the file.

IT IS SO ORDERED.

DATED: March 2, 2010

Charles R. Breyer
United States District Judge

G:\PRO-SE\CRB\CR.08\Thurston, A1.msj.wpd

11